THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. AARON ADAMS, Defendant-Appellant.

Third District    No. 3—07—0060

Opinion filed March 5, 2009.

Robert Agostinelli, of State Appellate Defender's Office, of Ottawa, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (Terry A. Mertel and Robert M. Hansen, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LYTTON delivered the opinion of the court:

Following a hearing determining that he was not indigent, defendant Aaron Adams proceeded to trial *pro se* and was convicted of unlawful possession with intent to deliver a controlled substance and unlawful possession of a weapon by a felon (case No. 05—CF—1250) (720 ILCS 570/401(a)(2)(A) (West 2004); 720 ILCS 5/24—1.1(a) (West 2004)). He was sentenced to concurrent terms of 8 years and 2½ years. He appeals, alleging that (1) he was not proven guilty of either charge beyond a reasonable doubt, and (2) his constitutional right to competent counsel was violated when the trial court found that he was not indigent. We reverse and remand.

## STATEMENT OF FACTS

Defendant was charged in case No. 05—CF—1250 with two counts of unlawful possession, two counts of unlawful possession with intent to deliver, and one count of unlawful possession of a weapon by a felon.

In addition to case No. 05—CF—1250, defendant had been charged in two other unrelated cases, case No. 04—CF—220 and case No. 06—CF—934. Attorney William Loeffel represented defendant in the 2004 and 2006 cases. Defendant was represented by attorney Joel Brown in case No. 05—CF—1250 until September 20, 2006, when his motion to withdraw was granted. Defendant requested a continuance to hire new counsel. The continuance was granted and the matter was postponed until October 3. At that time, defendant was given until October 11 to find private counsel. On October 11, defendant stated that he had secured a meeting with an attorney for October 12. The matter was again continued to October 18 to allow for this meeting. Defendant expressed concern that any attorney he was able to retain would not have time to adequately defend him. At the October 18 hearing, defendant requested a continuance because he was still unable to find an attorney willing to take his case. The motion was denied, and defendant then understood that he was to proceed to trial without an attorney.

The trial was scheduled to begin on October 23, 2006. However, attorney Brown refused to turn over defendant's records, stating that he was holding them until defendant paid him a certain amount of money. Defendant sought a continuance until he could get the records but his request was denied.

The trial was eventually delayed to December 11, 2006, because there was no judge available. Prior to the trial date, defendant requested a public defender, and the court reconvened on November 29, 2006, for a hearing on the defendant's indigency. The record does not disclose a completed affidavit of indigency form. In questioning by the court, defendant stated that he had been temporarily employed making $9 an hour but was currently unemployed, he had $300 to $400 saved, he did not have a house or an apartment, and he owned a 1975 Camaro. Defendant purchased the Camaro for $1,700, restored it and believed it was now worth approximately $6,000. The judge found that since defendant could use the equity in the car to hire private counsel, he did not qualify for the services of a public defender. He then admonished defendant to find counsel to protect his rights and, over defendant's objection, set the matter for trial.

The jury trial began on December 11, 2006. Defendant represented himself. At the trial, the evidence showed that on November 2, 2005, several Peoria police officers executed a search warrant at 2117 North Peoria Street. Once inside the house, the officer discovered defendant and two females in the kitchen. Defendant attempted to flee the room but was apprehended. Five individually wrapped packets of powdered cocaine, weighing more than 15 grams, and $2,580 in cash were taken

from his pants pocket. Officers found an off-white powder containing cocaine on the kitchen counter, along with a scale cover. The police also discovered approximately 34 grams of cocaine in a bedroom nightstand drawer. In the drawer next to the cocaine, officers found defendant's driver's license, a utility bill in the name of Cheri Baricuatro, and a photograph of defendant with Baricuatro. On top of the nightstand, officers recovered a scale, a video monitor and a loaded .32-caliber handgun. Cash totaling $800 was found in the top drawer of the nightstand. Other items found nearby included plastic baggies, a bottle of inositol powder, various court documents in defendant's name and approximately $274 in cash in a safe.

Officer Jerry Bainter established a chain of custody for several exhibits. Bainter stated that the use of "tear off" baggies was "the most common way cocaine was packaged in Peoria." According to his testimony, the discovery of scales, a video system and inositol, a chemical commonly used to "cut" cocaine, was indicative of a drug operation.

Defendant called two witnesses. Both testified that defendant did not live at 2117 Peoria Street.

The jury found defendant guilty of unlawful possession with intent to deliver and unlawful possession of a weapon by a felon. Defendant was sentenced to concurrent terms of 8 years and 2½ years. Defendant filed a posttrial motion for a new trial claiming insufficiency of the evidence, denial of his sixth amendment right to confront witnesses against him, and denial of his right to assistance of counsel. Defendant also claimed that the trial court abused its discretion in finding him not indigent.

The trial court denied defendant's motion for a new trial. The court then determined that he was indigent for purposes of the appeal and an appellate defender was appointed.

## ANALYSIS

### I

Defendant first argues that the State has presented insufficient evidence to prove him guilty beyond a reasonable doubt of either unlawful possession with intent to deliver or unlawful possession of a weapon by a felon.

The standard of review for claims challenging the sufficiency of the evidence is whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins*, 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277 (1985). A court of review may not substitute its own judgment for that of the

trier of fact on matters of credibility or weight of the evidence. *People v. Beasley*, 384 Ill. App. 3d 1039, 1046, 893 N.E.2d 1032, 1038 (2008).

To convict defendant of unlawful possession with intent to deliver, the State must establish (1) the defendant had knowledge of the presence of the controlled substance, (2) the controlled substance was in the immediate possession or control of the defendant, and (3) the defendant intended to deliver the controlled substance. 720 ILCS 570/401 (West 2004); *People v. Ballard*, 346 Ill. App. 3d 532, 541, 805 N.E.2d 656, 663 (2004). Constructive possession may exist even when the defendant no longer physically controls the drugs, so long as defendant once had physical control over them with intent to exercise control, and he has not abandoned them and no one else had obtained possession. *People v. Adams*, 161 Ill. 2d 333, 641 N.E.2d 514 (1994).

■ Here, defendant was found in the kitchen. Cocaine and items used to prepare cocaine for consumption were discovered on the kitchen counter. Further, he had five small packets of cocaine in his pants pocket and a significant sum of cash. More cocaine was found near defendant's personal items such as his driver's license, court documents, and photos. These facts indicate that defendant controlled the cocaine and establish both his possession and knowledge.

In addition, the cocaine was packaged in five individual baggies, a manner common for resale in the area. A scale, bottles of inositol powder, plastic baggies, and large amounts of cash were also found in the home near defendant's personal items. This evidence implies that the cocaine was for sale, not personal use, and shows an intent to deliver. Thus, the State produced sufficient evidence at trial for the jury to find beyond a reasonable doubt that defendant possessed the cocaine with intent to deliver.

Defendant was also found guilty of unlawful possession of a weapon by a felon pursuant to section 24—1.1(a) of the Criminal Code of 1961 (Code) (720 ILCS 5/24—1.1(a) (West 2004)). To prove this offense, the State must show that the defendant had a prior felony conviction and knowingly possessed a firearm. 720 ILCS 5/24—1.1(a) (West 2004); *People v. Stack*, 244 Ill. App. 3d 393, 398, 613 N.E.2d 366, 370 (1993). To establish possession, the State must show that defendant knew of the presence of the firearm and that it was in his immediate and exclusive possession. *People v. Drake*, 288 Ill. App. 3d 963, 968-69, 683 N.E.2d 1215, 1219 (1997). Possession may be actual or constructive. Constructive possession may be inferred from the facts; evidence establishing it is often circumstantial. *People v. Neylon*, 327 Ill. App. 3d 300, 762 N.E.2d 1127 (2002).

■ Here, the parties stipulated to defendant's prior felony conviction. The State presented evidence that the loaded handgun was

located on top of the bedroom nightstand near the drugs. That same nightstand also contained defendant's driver's license, his court documents and personal photos. Based on these facts, a trier of fact could reasonably infer that the gun belonged to defendant. We therefore conclude that the jury's finding of guilt beyond a reasonable doubt of possession of a firearm by a felon was supported by the evidence.

## II

Defendant also argues that his constitutional right to counsel was violated because the trial court wrongly found that he was not indigent and therefore did not qualify for the services of a public defender.

Under the sixth amendment to the United States Constitution, as well as Illinois law, a defendant has the right to appointed counsel if he is indigent and charged with a crime that could result in imprisonment. U.S. Const., amend. VI; 725 ILCS 5/113—3 (West 2004). A finding of indigency is generally left to the trial court's discretion. *People v. Kennedy*, 204 Ill. App. 3d 681 (1990). Such a determination should be based on as complete a financial picture as possible. *People v. Ellis*, 309 Ill. App. 3d 443 (1999). A defendant need not be entirely without funds. *People v. Miller*, 23 Ill. App. 3d 149 (1974). Rather, a defendant may be indigent if he lacks financial resources on a "practical basis" to retain counsel. *Ellis*, 309 Ill. App. 3d at 446. The method of arriving at a determination of a defendant's ability to pay must include a balancing of assets against liabilities and also the defendant's income. *People v. Penermon*, 108 Ill. App. 3d 73 (1982).

Whether court-appointed counsel is appropriate must be carefully considered. In a close case, trial courts should favor appointment of counsel to assure protection of the defendant claiming indigence. *Ellis*, 309 Ill. App. 3d at 446; see also *People v. Gustavson*, 131 Ill. App. 2d 887 (1971) (noting that courts view failure to appoint counsel as a serious deprivation).

■ In this case, defendant was not employed, did not have any significant savings and owned only one sizeable asset, his Camaro. The record does not indicate his monthly expenses for groceries, utilities or other necessary expenses. That defendant had in his possession a 1975 Camaro, which he estimated was worth $6,000, does not, *ipso facto*, render him ineligible for court-appointed counsel. See *People v. Wright*, 41 Ill. App. 3d 364 (1976) (possession of car worth $1,400 did not establish defendant was not indigent). While a determination of indigency is generally left to the trial court's discretion, a determination must include a balancing of assets against liabilities and consideration of defendant's income. Here, defendant was not required to provide reliable information in the form of an affidavit of assets and

liabilities. See 725 ILCS 5/113—3(b) (West 2006). Moreover, the trial court did not conduct a specific inquiry into defendant's ability to pay. See *Penermon*, 108 Ill. App. 3d at 77. Without an affidavit or the consideration of other facts regarding defendant's liabilities, we cannot say there was a meaningful balancing of defendant's financial status. We therefore find the trial court abused its discretion in determining defendant was not indigent.

However, the State argues that even without an affidavit defendant's car alone was a sufficient asset to preclude a finding of indigency, citing *People v. Maretti*, 61 Ill. App. 3d 762 (1978). We disagree. In *Maretti*, the defendant owned two vehicles, a $2,200 motorcycle and a 1975 Plymouth. The trial court held that defendant was not indigent because he could sell or encumber the motorcycle to pay for an attorney and still have a vehicle to use for transportation and to support his family. The defendant refused to sell his motorcycle and chose instead to represent himself. On those facts, the appellate court declined to find an abuse of discretion and summarily affirmed the trial court's ruling. Defendant in this case owned only one vehicle, not two, and he did not refuse to sell the car. The record does not show that he had any other vehicle to use for transportation or to actively seek employment opportunities. Thus, *Maretti* does not apply.

Moreover, if a proper balancing had occurred in this case and the trial court had determined that the car was a sufficient asset, we would still reverse. The defendant should have been given an adequate opportunity to liquidate that asset in order to procure counsel. We fully appreciate the trial court's desire to bring this case to trial after numerous delays, but given the severity of the charges and ultimate sentencing, defendant needed access to an attorney's skill and knowledge to afford him the representation to which he is entitled. See generally *Strickland v. Washington*, 466 U.S. 668, 685, 80 L. Ed. 2d 674, 692, 104 S. Ct. 2052, 2063 (1984) (defendants should be afforded " 'ample opportunity to meet the case of the prosecution' "), quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 275, 87 L. Ed. 268, 273, 63 S. Ct. 236, 240 (1942). To obtain that access, defendant needed to sell or lien his Camaro and then use those funds to hire an attorney. When a defendant owns a potentially valuable but illiquid asset, he should be given a reasonable time to turn the asset into cash with which to hire counsel. In this case, 12 days was not a reasonable amount of time.

We therefore remand this cause for a new indigency hearing to allow the court to enter proper findings consistent with this opinion. On remand, we note that our decision does not foreclose a hearing under section 113—3.1 of the Code of Criminal Procedure of 1963 (725 ILCS

5/113—3.1 (West 2006)) for payment of court-appointed counsel. See *Ellis*, 309 Ill. App. 3d at 447.

## CONCLUSION

The judgment of the circuit court of Peoria County is reversed and remanded for further proceedings.

Reversed and remanded.

McDADE and WRIGHT, JJ., concur.